J-A25041-25                    2026 PA Super 145

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              :         PENNSYLVANIA
                                              :

          v.                           :
                                              :
                                              :

KENNETH SULLIVAN SMITH         :
                                              :

        Appellant                :     No. 2702 EDA 2024

Appeal from the Judgment of Sentence Entered September 6, 2024
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000328-2020

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              :         PENNSYLVANIA
                                              :

          v.                           :
                                              :
                                              :

KENNETH SULLIVAN SMITH         :
                                              :

        Appellant                :     No. 2703 EDA 2024

Appeal from the Judgment of Sentence Entered September 6, 2024
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000075-2021

BEFORE:   LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY FORD ELLIOTT, P.J.E.:         **FILED JULY 8, 2026**

      Appellant, Kenneth Sullivan Smith, appeals from the judgment of sentence imposed by the Court of Common Pleas of Pike County after a jury found him guilty of ten offenses related to possession with intent to deliver a controlled substance (PWID) and drug delivery resulting in death (DDRD),

_____

[*] Retired Senior Judge assigned to the Superior Court.

both in connection with heroin combined with fentanyl ("heroin/fentanyl").[1] Appellant presents eight issues on appeal. After careful review, we affirm the convictions, but vacate the judgments of sentence, and remand for resentencing.

The record reflects that Appellant became the target of a drug trafficking investigation by the Pennsylvania State Police after a heroin/fentanyl overdose that occurred around April 25, 2020. **See** N.T. Trial, 7/10/24, at 94-96. During the investigation, the police arranged a controlled buy of heroin between Appellant and a confidential informant ("CI"). **See** N.T. Trial, 7/11/24, at 9. The CI consented to a wiretap, and his vehicle had a mobile vehicle recorder ("MVR") installed. **See** N.T. Trial, 7/10/24, at 220-23; Commonwealth Trial Exhibit 32 ("MVR Recording"). Although no purchase occurred, Appellant was recorded via the MVR and talked to the CI about his drug distribution network. **See** N.T. Trial, 7/11/24, at 13-15, 22-23.

On June 24, 2020, the CI indicated to police that Appellant and another individual, Paul Wassel, would be driving to Patterson, New Jersey, to pick up heroin. **See** N.T. Trial, 7/11/24, at 25-26. The next day, police arranged another controlled buy between Appellant and the CI at an inn in Pike County, Pennsylvania. **See id.** at 26-27. Appellant and Wassel arrived in a white Chevrolet Malibu ("Chevy"). **See id.** at 29.

---

[1] We consolidated these matters *sua sponte* on appeal. **See** Superior Court Order, 2/10/25; **see also** Pa.R.A.P. 513.

Then, police arrested Appellant and Wassel and took them into custody. **See** N.T. Trial, 7/10/24, at 32.[2] Appellant did not give consent to the police to search the Chevy. **See id.** 34. That same day, police obtained a search warrant for the Chevy and found forty-six heroin/fentanyl bricks, a glass smoking device with residue, and three bundles of heroin/fentanyl stamped "Mike Tyson" in blue. **See id.** at 42; **see also** Omnibus Hearing Commonwealth Exhibit 2 ("Search Warrant/Affidavit Packet"), 6/25/20, at 13 (listing items seized).

On August 31, 2020, Appellant, under docket number 328-2020, was charged with one count each of PWID, criminal conspiracy to commit PWID, knowing or intentional possession of a controlled substance, possession of drug paraphernalia, and tampering with or fabricating physical evidence. **See** Bill of Information, 8/31/20, at 1-2.[3] After further investigation, while Appellant was in custody, Samuel Mittelmark and he were identified as individuals who spoke to the April 25th overdose victim via text and Facebook messages about purchasing heroin. **See** N.T. Trial, 7/10/24, at 96-97, 108,

_____

[2] Wassel was tried separately in front of a jury who found him guilty of PWID and several related offenses on March 11, 2022. **See Commonwealth v. Wassel**, 2023 WL 8470614, *1 (Pa. Super., filed Dec. 7, 2023) (unpublished memorandum) (2378 EDA 2022). On appeal, our Court affirmed Wassel's judgment of sentence. **See Commonwealth v. Wassel**, 311 A.3d 566 (Pa. Super. 2023) (table).

[3] **See** 35 P.S. § 780-113(a)(30), 18 Pa.C.S. § 903(a)(1), 35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(32), and 18 Pa.C.S. § 4910(2), respectively.

110, 120.[4] On March 29, 2021, Appellant was charged, under docket number 75-2021, with one count of drug delivery resulting in death ("DDRD"), criminal conspiracy to commit DDRD, criminal use of a communication facility, PWID, and criminal conspiracy to commit PWID.[5] **See** Bill of Information, 3/29/21, at 1-3. The Commonwealth issued a notice of consolidation to try both of Appellant's cases together. **See** Notice of Consolidation, 3/29/21, at 1. The trial court summarized Appellant's legal representation as follows:

> In this case, [] Appellant was represented by a litany of attorneys at various stages of litigation and, for a period of approximately nine months, represented himself. The record indicates that [] Appellant was initially represented by the Pike County Public Defender, but hired private counsel (Attorney Ashley G. Zimmerman, Esq.) on or about December 8, 2020. On November 2, 2021, Attorney Zimmerman was granted leave to withdraw as counsel for [] Appellant after [he] failed to abide by the terms of representation. On the same date, the trial court appointed Attorney James P. Baron Esq., to represent [] Appellant. On March 25, 2022, Attorney Baron was granted leave to withdraw as counsel for [] Appellant after significant conflicts between them arose and [] Appellant requested that Attorney Baron withdraw. On the same day, the trial court conducted a waiver of counsel colloquy in accord with [Pennsylvania Rule of Criminal Procedure] 121(A)(2) and permitted [] Appellant to represent himself.

Trial Court Opinion, 12/11/24, at 5-6 (citations omitted and brackets added).

---

[4] On August 25, 2022, Samuel Mittelmark, co-defendant in the case at docket number 75-2021, entered a guilty plea for one count of conspiracy to commit DDRD, and was sentenced on November 4, 2022. **See** Trial Court Docket No. CP-52-CR-0000074-2021.

[5] **See** 18 Pa.C.S. §§ 2506(a), 903(a)(1), 7512(a), 35 Pa.C.S. § 780-113(a)(30), and 18 Pa.C.S. § 903(a)(1), respectively.

Appellant filed multiple *pro se* omnibus pre-trial motions while he was represented by counsel.[6] In March 2022, after he waived representation, Appellant filed a final *pro se* omnibus pre-trial motion consisting of thirteen separate requests for relief. ***See generally*** Omnibus Pre-Trial Motion, 3/29/22.[7] A hearing was held on June 2, 2022 ("Omnibus Hearing"), where Appellant was colloquied and chose to proceed *pro se*. ***See*** N.T. Omnibus Hearing, 6/2/22, at 6-7.[8] At the Omnibus Hearing, Corporal Shawn Smith, a member of the Pennsylvania State Police, testified that he located Appellant's cellular phone in the Chevy. ***See id.*** at 39-41, 65-72. Corporal Smith also explained that he wrote the affidavit of probable cause and application for the

---

[6] ***See*** Omnibus Pre-Trial Motion, 10/19/21; Omnibus Pre-Trial Motion 10/25/21; Omnibus Pre-Trial Motion, 11/8/21; Amended Omnibus Pre-Trial Motion, 12/1/21. These motions were not properly before the court because hybrid representation is prohibited. All *pro se* filings by criminal defendants with legal representation, with notable exceptions for, *inter alia*, notices of appeal, are generally legal nullities and have no effect. ***See Commonwealth v. Williams***, 241 A.3d 353, 355 (Pa. Super. 2020).

[7] Appellant incorporated the following motions into his omnibus pre-trial motion: a motion to compel discovery; a motion for suppression of evidence; a motion for suppression of statements, testimony, affidavits, and narratives, a motion for appointment of an investigator; a motion for a *habeas corpus* hearing; a motion for bail reduction and modification; a motion for dismissal of charges; a motion to reserve the right to file supplemental motions; a motion to block consolidation; a motion for additional peremptory strikes; a motion for new jury panel; and a motion to compel a list of trial witnesses from the Commonwealth. ***See generally*** Omnibus Pre-Trial Motion, 3/29/22.

[8] Properly abiding by the prohibition on hybrid representation, the trial court only considered the March 29, 2022, omnibus pre-trial motion. ***See*** Order (denying omnibus pre-trial motion), 1/9/23, at 1.

Search Warrant for the Chevy and served as the affiant for both. *See id.* 41, 67; *see also* Search Warrant/Affidavit Packet.

On January 9, 2023, the trial court entered an order denying Appellant's omnibus pre-trial motion. *See* Order (denying omnibus pre-trial motion), 1/9/23. One day later, trial counsel was appointed to represent Appellant. *See* Order (appointing trial counsel), 1/10/24, at 1. Then, on June 24, 2024, trial counsel filed motions *in limine* to exclude: (1) portions of the MVR referencing his prior arrests or convictions; (2) statements by an unidentified female on the recording; and (3) evidence of an unrelated controlled sale made to the CI. *See* Motions *in Limine*, 6/24/24. Following a hearing, on July 5, 2024, the trial court granted in part Appellant's motion *in limine* to preclude portions of the MVR referring to his prior arrests or convictions. *See* Order (granting in part and denying in part motion *in limine*), 7/5/24, at 1. The other two motions *in limine* were denied as moot. *See id*.

Trial by jury commenced on July 9, 2024. On that date, following the Commonwealth's filing of a motion for reconsideration and clarification of the court's July 5th order, the trial court issued a new order permitting the Commonwealth to introduce the MVR footage because the statements by the CI were admissible statements of an alleged co-conspirator and the included statements by Appellant were admissible as opposing party admissions. *See* Commonwealth's Motion for Reconsideration, 7/8/24, at 1-2; Order (granting Commonwealth's motion for reconsideration), 7/9/24, at 1; *see also* Pa.R.E. 803(25)(A), (E).

At trial, the Commonwealth introduced a plethora of evidence including authenticated extractions from the cellphones of Appellant, the DDRD victim, and the co-conspirator at 75-2021, Mittelmark. **See** N.T. Trial, 7/10/24, at 57, 85-89. The Commonwealth also moved to admit the MVR recording, the subject of the contested motion *in limine*, and Appellant's trial counsel placed an objection on the record. **See** N.T. Trial, 7/10/24, at 226. Appellant did not testify in his own defense but presented exhibits.

On July 12, 2024, the jury found Appellant guilty on all counts. **See** N.T. Trial, 7/12/24, at 123-24. On September 6, 2024, the court sentenced Appellant to an aggregate term of thirty-five years and four months to eighty-seven years and six months of incarceration, with 1,534 days credit for time served. **See** Order (sentencing), 9/6/24, at 5-6 (unpaginated).[9] Appellant timely filed a notice of appeal, and he and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. **See** Notice of Appeal, 9/6/24;

_____

[9] The trial court imposed consecutive imprisonment terms at docket number 75-2021 of 102 to 304 months for DDRD, 90 to 270 months for conspiracy to commit DDRD, 16 to 32 months for criminal use of a communication facility, and 27 to 54 months each for PWID, and conspiracy to commit PWID. **See** Order (sentencing), 9/6/24, at 1-3 (unpaginated).

At docket number 328-2020, the court imposed consecutive imprisonment terms of 78 to 156 months each for PWID and conspiracy to commit PWID, and 6 to 24 months for tampering with or fabricating physical evidence. **See** *id.* at 3-5 (unpaginated). In the same case, the court also imposed concurrent imprisonment terms of 14 to 28 months for knowing or intentional possession of a controlled substance and 4 to 12 months for possession of drug paraphernalia. **See** *id.* at 4-5 (unpaginated).

Rule 1925(b) Order, 10/7/24; Rule 1925(b) Statement, 10/28/24; Trial Court

Opinion, 12/11/24.

Appellant raises the following issues on appeal:

I. Did the trial court err in failing to timely appoint stand-by counsel for [] Appellant, thus causing substantial prejudice during critical stages of the proceeding[?]

II. Did the trial court err in denying [] Appellant's request for [the] appointment of [an] investigator[?]

III. Did the trial court err in denying [] Appellant's suppression motion for suppression of evidence of cellphone records where the [S]earch [W]arrant was overbroad[?]

IV. Did the trial court err in denying [Appellant's] motion in [*limine*] to preclude video and audio evidence of Appellant and [the CI] where the recording constituted hearsay, was highly prejudicial[,] and lacked probative value[?]

V. Did the trial court err in permitting the admission of unverified text messages from individuals not present at trial, constituting hearsay[?]

VI. Did the trial court err in prohibiting trial counsel from raising issues previously litigated by Appellant as a *pro se* litigant without standby counsel[?]

VII. Did the trial court err in failing to sever [the cases at] docket number[] 328-2020 and docket number[] 75-2021 following [Appellant's motion to block consolidation?]

VIII. Did the Commonwealth fail to demonstrate the elements of the crime of [DDRD] in that the Commonwealth failed to demonstrate causation[?]

Appellant's Brief at 14-15 (unnecessary capitalization omitted and brackets

added).

In his first issue, Appellant argues that the trial court committed an error

of law by failing to "timely" appoint standby counsel, thus depriving him of his

right to counsel during critical stages of his trial court proceedings. *See* Appellant's Brief at 35. He asserts that, although he waived his right to counsel and proceeded *pro se* beginning on March 25, 2022, the trial court did not appoint standby counsel until December 19, 2022. *See id.* at 36. Further, Appellant maintains that this nine-month period without standby counsel encompassed multiple critical stages of his proceedings, including the filing of *pro se* omnibus pre-trial motions and the litigation of those motions. *See id.*

Moreover, Appellant argues Pennsylvania Rule of Criminal Procedure 121 reflects a general preference for the appointment of standby counsel when a defendant elects to proceed *pro se*, particularly during proceedings involving the exercise of judicial discretion or certain legal rights. *See* Appellant's Brief at 38-39. He also contends that the trial court failed to conduct a proper re-reading of a *Grazier*[10] colloquy contemporaneously at the Omnibus Hearing, as required by Rule 121, before permitting him to proceed *pro se*. *See id.* at 41. Accordingly, he asserts that the trial court committed a reversible error and a reversal is required. *See id.* at 42. Appellant is not entitled to relief on this claim.

"Both the right to counsel and right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. Deprivation of these rights can never be harmless." *Commonwealth v. Johnson*, 158 A.3d 117,

_____

[10] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

121 (Pa. Super. 2017) (citation omitted). Pursuant to Rule 121, a defendant may waive the right to counsel. **See** Pa.R.Crim.P. 121(A)(1). Furthermore, "[w]hen a defendant seeks to waive the right to counsel, the trial court must conduct on the record a full and complete waiver colloquy to determine whether the defendant's waiver is knowing, voluntary, and intelligent." **Commonwealth v. Floyd**, 257 A.3d 13, 17-18 (Pa. Super. 2020) (citation omitted); **see also** Pa.R.Crim.P. 121(C).

"When the defendant's waiver of counsel is accepted, standby counsel **may** be appointed for the defendant." **See** Pa.R.Crim.P. 121(D) (emphasis added). "[A] judge's thorough inquiry into the accused's appreciation of both [the right to counsel and the right to represent oneself] must be used in certain summary proceedings, at trial, guilty plea hearings, sentencing, and every 'critical stage' of a criminal proceeding." **Johnson**, 158 A.3d at 122. A trial court's failure to conduct a valid colloquy before allowing a defendant to proceed *pro se* constitutes reversible error. **See Floyd**, 257 A.3d at 18. "The alleged denial of a constitutional right is a question of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. McLendon**, 293 A.3d 658, 666 (Pa. Super. 2023) (citation omitted).

Upon review of the record, we discern no error by the trial court. **See McLendon**, 293 A.3d at 666. The trial court under the presented circumstances appeared to act "as efficiently as possible" to appoint standby counsel without conflicts from the attorneys available to represent Appellant.

Trial Court Opinion, 12/11/24, at 4. Moreover, Appellant was properly colloquied on his rights to representation at *every* proceeding that he represented himself, including the Omnibus Hearing. **See** N.T. Omnibus Hearing, 6/22/22, at 6-7; Trial Court Opinion, 12/11/24, at 6. Further, "[n]either the United States Supreme Court nor our Rules of Criminal Procedure mandate the appointment of standby counsel." **Commonwealth v. Spotz**, 47 A.3d 63, 82 (Pa. 2012); **Commonwealth v. Tejada**, 188 A.3d 1288, 1290 (Pa. Super. 2018). Accordingly, Appellant's first claim is meritless.

In his second issue, Appellant argues that the trial court erred in denying his request for an appointment of an investigator. **See** Appellant's Brief at 42. Appellant maintains that he articulated specific reasons for requesting an investigator, both in written motions and during the Omnibus Hearing. **See id.** (citing Omnibus Pre-Trial Motion, 3/29/22, at 25-27; N.T. Omnibus Hearing, 6/22/22, at 34-36). He alleges that the trial court's assertion that he failed to identify a particular need for an investigator is a misrepresentation of the record. **See id.** at 42, 45 (citing Trial Court Opinion, 1/9/23, at 7).[11]

_____

[11] Additionally, Appellant argues the trial court's citation to **Commonwealth v. Howard**, 719 A.2d 233 (Pa. 1998), is inapplicable because Howard's request for the appointment of an expert arose in a post-conviction collateral review context and not for the purposes of trial preparation. **See** Appellant's Brief at 43-44; **see also** Trial Court Opinion, 12/11/24, at 7. We discern no error in the trial court's reliance on **Howard** for general principles governing requests for an investigator. **See Howard**, 719 A.3d at 242 (holding that a "[r]equest for professional assistance need not be granted where the defendant, appellant, or postconviction petitioner fails to identify particularized need for such assistance related to a colorable issue presented
*(Footnote Continued Next Page)*

Appellant contends that his case presented a unique situation because the Commonwealth's evidence consisted of "technological evidence" including videos, jail recordings, toxicology reports, and cellphone extractions. **See** Appellant's Brief at 44-45. He argues that, as an indigent and incarcerated individual, he was unable to investigate this evidence without professional assistance. **See id.** at 45. He relies on **Commonwealth v. Serge**, 896 A.2d 1170, 1184 (Pa. 2006), to emphasize the increasing role of technology in modern litigation, and **Ake v. Oklahoma**, 470 U.S. 67 (1985), to argue that due process requires the appointment of necessary assistance to ensure a fair opportunity to present a defense. **See id.** at 44-45. Accordingly, Appellant asserts that the denial of his request for an investigator constituted reversible error. **See id.** at 45. We disagree.

We have consistently held that the "[a]ppointment of expert witnesses and the provision of public funds to hire them to assist in the defense against criminal charges are decisions within the trial court's sound discretion and will not be reversed absent an abuse thereof." **Commonwealth v. Wholaver**, 989 A.2d 883, 894 (Pa. 2010). Further, "[t]he Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one."

---

in his defense, appeal, or petition, or where an adequate alternative to the requested form of professional assistance is available."); **see also Commonwealth v. Serge**, 896 A.2d 1170, 1185 (Pa. 2006) (citing the same passage from **Howard** while assessing the arguable merits of a direct review claim concerning lack of funding for a court-appointed investigator for the purposes of trial preparation).

*Commonwealth v. Nabried*, 327 A.3d 315, 327 (Pa. Super. 2024) (citation omitted). Rather, "[t]here must be some showing as to the content and relevancy of the proposed expert testimony before such a request will be granted." *Id.* (citation omitted).

First, Appellant's reliance on *Ake* is misplaced. As our Supreme Court has previously explained, *Ake* addressed a narrow circumstance in which an indigent defendant is constitutionally entitled to an expert psychiatrist when their sanity is a significant factor at a capital trial proceeding. *See Commonwealth v. Bardo*, 709 A.2d 871, 875 (Pa. 1998) (stating *Ake* concerns court-appointed psychiatrists, not investigators). Here, Appellant's sanity is not at issue, he was not subjected to a capital trial proceeding, and he is not entitled to an investigator simply because he requests one. *See* Omnibus Pre-Trial Motion, 3/29/22, at 25-27; *Wholaver*, 989 A.2d at 895.

As to Appellant's reliance on *Serge*, we find it unconvincing, as the defendant in that case argued that the Commonwealth spent thousands of dollars to develop a computer-generated animation for their use at trial which was allegedly unfair because he could not afford to create his own animation for his defense. *See Serge*, 896 A.2d at 1184. Here, Appellant contended in his omnibus pre-trial motion that he simply needed an investigator to "gather evidence and clear up discrepancies." Omnibus Pre-Trial Motion, 3/29/22, at 26. The trial found that Appellant failed to show a particularized need related to a colorable issue presented with respect to his defense and he had previously qualified for public defender representation, hired private counsel

at one point, and had been appointed counsel. *See* Order, 1/9/23, at 7; Trial Court Opinion, 12/11/24, at 7-8. We discern no abuse of discretion. *See Wholaver*, 989 A.2d at 894. Accordingly, Appellant's second issue is meritless.

In his third issue, Appellant first argues the trial court erred in denying his motion to suppress his cellular phone records on the basis that the June 25th Search Warrant was overbroad. *See* Appellant's Brief at 46 (citing *Commonwealth v. Orie*, 88 A.3d 983, 1002 (Pa. Super. 2014)). Appellant relies on the facts of *Commonwealth v. Young*, 287 A.3d 907 (Pa. Super. 2022), for the proposition that our Court should find the June 25th Search Warrant in this case overbroad. *See* Appellant's Brief at 47-48 (citing *Young*, 287 A.3d at 911, 913, 929). He avers that law enforcement extracted everything from his cellphone, producing thousands of pages of data, including highly personal and irrelevant information dating back to years before the alleged offenses. *See id.* at 50-52 ("As in *Young*, all evidence from the [S]earch [W]arrant should therefore be suppressed and the [c]ourt erred in failing to do so.").

Second, Appellant argues that his own testimony at the Omnibus Hearing also corroborated the breadth of the cellphone extraction. *See* Appellant's Brief at 51 (citing N.T. Omnibus Hearing, 6/2/22, at 23-24 (explaining other inmates were printing explicit photographs from his cellphone discovery extraction)). Further, Appellant argues that the June 25th Search Warrant failed to incorporate the affidavit of probable cause to properly

- 14 -

limit its scope and thus imposed no time limit restrictions on the collection of relevant information. **See id.** at 52. Accordingly, Appellant concludes that the trial court's failure to deny the Commonwealth's suppression of his phone data was not harmless and both verdicts should be reversed and vacated. **See id.** at 53. We disagree.

The following principles govern our review of an order denying a suppression motion:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.
>
> Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

**Commonwealth v. Carey**, 249 A.3d 1217, 1223 (Pa. Super. 2021) (citation omitted).

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures." **Commonwealth v. Adorno**, 291 A.3d 412, 415 (Pa.

Super. 2023); *see also* U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. These constitutional protections require that "all warrants, be they for the search of physical or digital spaces, must[:] (1) describe the place to be searched and the items to be seized with specificity[;] and (2) be supported by probable cause to believe that the items sought will provide evidence of the crime." ***Commonwealth v. Choice***, 345 A.3d 719, 734 (Pa. Super. 2025). An overbroad warrant is "unconstitutional because it authorizes a general search and seizure." ***Young***, 287 A.3d at 920.

After our review, we conclude that Appellant's reliance on ***Young*** is misplaced. In ***Young***, we affirmed the trial court's decision to suppress a search warrant to search for two cell phones. ***See Young***, 287 A.3d at 916. However, the defendant in ***Young*** provided in his suppression motion the exact evidence he wished to suppress and stated the grounds for suppression with foundational facts and applicable law. ***See id.*** Moreover, we articulated in ***Young*** that the Commonwealth "plainly comprehended that overbreadth was at issue, as it provided extensive argument in opposition[.]" ***Id.***

Instantly, as we stated above, we are limited to reviewing only the evidence presented in the suppression motion and pre-trial proceedings. ***Carey***, 249 A.3d at 1223. Here, unlike in ***Young***, Appellant did not assert any foundational facts or applicable law in his suppression motion which listed various items. ***See*** Omnibus Pre-Trial Motion, 3/29/22, at 13-14. Therefore, Appellant was not compliant with Rule 581(D) which provides that motions for the suppression of evidence must "state specifically and with particularity the

evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). Furthermore, at the Omnibus Hearing, Appellant did not assert any applicable law or point to specific parts of the June 25th Search Warrant, instead arguing at one point that there was an "overbreadth of discovery." **See** N.T. Omnibus Hearing, 6/2/22, at 54.

We also find that Appellant misrepresented his testimony "corroborating the breadth of the cellphone extraction" at the Omnibus Hearing. Appellant's Brief at 51. In fact, the testimony Appellant cites to in his appellate brief concerned only Appellant's oral argument for his motion for bail modification and not his suppression motion. **See id.** (citing N.T. Omnibus Hearing, 6/2/22, at 23-24). Accordingly, we find that Appellant's third issue is waived for lack of preservation in his *pro se* omnibus pre-trial motion. **See** Pa.R.Crim.P. 581(D).[12]

Appellant's fourth and fifth issues relate to the admissibility of evidence. We review challenges to the admissibility of evidence for an abuse of discretion:

> The admissibility of evidence is a matter within the sound discretion of the trial court and only a showing of an abuse of that discretion, and resulting in prejudice, constitutes reversible error.

---

[12] We note that Judge Bowes in her concurring memorandum, would reach the merits of Appellant's suppression claim rather than find it waived. To the extent the claim is properly before us, we agree with Judge Bowes' conclusion that Appellant is not entitled to relief because any error in the denial of the suppression claim was harmless.

> An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will.

***Commonwealth v. Bowens***, 265 A.3d 730, 746 (Pa. Super. 2021) (*en banc*) (citations and quotation marks omitted; reformatted).

In his fourth issue, Appellant contends the trial court erred in reversing its decision to preclude evidence of interactions between Appellant and the CI where the recordings contained evidence of prior wrongful acts and criminal activity by Appellant that were highly prejudicial and lacked probative value. ***See*** Appellant's Brief at 53. As noted above, Appellant's motion *in limine* was partially granted as to the MVR video-recorded footage of Appellant's prior criminal acts as well as the controlled purchase between Appellant and CI. However, the trial court reversed the partially-granted motion on the grounds that statements by the CI were admissible statements of an alleged co-conspirator and that statements by Appellant were admissible as opposing party admissions.

Specifically, Appellant contests the two portions of the MVR footage of Appellant and the CI that were played during trial. ***See*** Appellant's Brief at 56-57. Appellant points to the portion of video where Appellant told the CI about his sale of THC[13] edibles, "other statements concerning prior criminal acts," and contemplations of whether he would have to "kill her" in reference

---

[13] THC is an abbreviation for Tetrahydrocannabinol, an active ingredient in marijuana.

to an ex-girlfriend. *Id.* at 56 (citing N.T. Trial, 7/11/24, at 13-16). Moreover, Appellant finds prejudicial that the Commonwealth's witness, Corporal Shawn Smith, testified about a prior controlled purchase from Appellant that was not related to the criminal charges in the case. *See id*. (citing N.T. Trial, 7/11/24, at 17-22) ("We had previously done a controlled purchase of Kody stamps [drug] from [Appellant].").

Finally, Appellant argues that the trial court failed to balance the probative value of the MVR footage against its prejudicial impact and only assessed the admissibility of that evidence based on hearsay exceptions. *See* Appellant's Brief at 57. He asserts that the admission of the MVR footage at trial permitted the Commonwealth to present evidence of "additional drug transactions and hollow threats made by the Appellant[.]" *Id.* In doing so, he alleges that the trial court allowed "evidence of a prior criminal activity or wrongful act on the part of the accused," which was highly prejudicial. *See id.* at 54 (citing *Commonwealth v. Kramer*, 566 A.2d 822, 844 (Pa. Super. 1989)). Therefore, because of the prejudicial MVR footage and the trial court's failure to assess Appellant's claim pursuant to Rules of Evidence 402, 403, and 404, Appellant reasons that his convictions should be reversed and remanded. *See id.* at 58. We find no relief is due.

As said above, we review a trial court's evidentiary rulings for an abuse of discretion. *Bowens*, 265 A.3d at 746. Pennsylvania Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

"Evidence is relevant if: (a) it has a tendency to make a fact more or less probable then it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

To the extent Appellant frames his challenge in terms of hearsay, that argument lacks merit. Appellant's own statements on the recording were admissible as opposing party admissions. **See** Pa.R.E 803(25)(A); **see Commonwealth v. Edwards**, 903 A.2d 1139, 1157 (Pa. 2006) ("it is fair in an adversary system that a party's prior statements can be used against him if they are inconsistent with his position at trial" and thus "a defendant's out-of-court statements are party admissions and are exceptions to the hearsay rule") (citation omitted). The CI's statements were admissible as co-conspirator statements made during and in furtherance of Appellant's conspiracy to deliver. **See** Pa.R.E. 803(25)(E); **see, e.g. Commonwealth v. James**, 297 A.3d 755, 767 (Pa. Super. 2023) (holding evidence sufficient to sustain a defendant's conviction for conspiracy to commit PWID, despite the fact that the alleged co-conspirator was CI where the Commonwealth presented evidence establishing that defendant and CI arranged to meet for the sole purpose of committing PWID and that defendant committed the overt act of providing cocaine to the informant in exchange for currency; "the

Commonwealth can prove a defendant's guilt for conspiracy without establishing the co-conspirator's guilt"). Essentially, Appellant in his fourth issue is asking us to determine whether the trial court appropriately balanced the probative value and prejudicial effect of the MVR footage evidence under Rule 403. We find no abuse of discretion in the admission of the evidence.

The trial court rejected Appellant's claim, explaining that the MVR footage of the conversation between Appellant and the CI implicated Appellant's intent to go to Patterson, New Jersey, and distribute illegal drugs there, and therefore the probative value of this evidence clearly outweighed the resulting prejudice. *See* Trial Court Opinion, 12/11/24, at 8. Additionally, we observe that Corporal Smith's reference to a prior controlled purchase was unrelated to the charges at issue, defense counsel objected, and the trial court sustained the objection. *See* N.T. Trial, 7/11/24, at 21-22. The court immediately instructed the jury that testimony was not relevant to the present case, and it was stricken from the record. *See id.*; *Commonwealth v. Storey*, 167 A.3d 750, 758 (Pa. Super. 2017) ("If the trial judge gives curative instructions, it is 'presumed that the jury will follow the instructions of the court.'") (citation omitted).

Upon our review of the record, we find no abuse of discretion. *See Bowens*, 265 A.3d at 746. "Trial courts are not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand." *Commonwealth v. Santiago-Burgos*, 314 A.3d 535, 544 (Pa. Super. 2024) (citation and internal quotation

- 21 -

marks omitted). We agree with the trial court that the MVR footage constituted direct evidence of the charged conspiracy. In fact, Appellant's intent for the related offenses was not so prejudicial that it diverted the jury's attention away from its duty of weighing the evidence impartially or improperly inflamed the jury to make a decision based on something other than the legal propositions relevant to the case. **See** Trial Court Opinion, 12/11/24, at 8. Accordingly, Appellant's fourth issue is meritless.

In his fifth issue, Appellant asserts that the trial court erred by permitting the admission of "unverified text messages" and Facebook messages from individuals, not present at trial. **See** Appellant's Brief at 59-63. We find the issue waived.

The trial court, in its Rule 1925(a) opinion, suggests that Appellant failed to identify which text messages or Facebook messages he claims are unverified and which individuals he claims were not present at trial in his Rule 1925(b) statement, and therefore it could not adequately assess the claim. **See** Trial Court Opinion, 12/11/24, at 10.

Upon review, we agree that Appellant failed to specify in his Rule 1925(b) statement which messages were the focus of his claim. **See** Pa.R.A.P. 1925(b) Statement, 10/28/24, at 2 ("The [t]rial [c]ourt erred in permitting the admission of unverified text messages from individuals not present at trial, constituting hearsay."). Therefore, we find this claim waived. **See Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) ("[T]he Rule 1925(b) statement must be 'specific enough for the trial court to address

the issue [an appellant] wish[es] to raise on appeal.") (citation omitted); *id.* ("[I]f a concise statement is too vague, the court may find waiver.").

In his sixth issue, Appellant argues, in three sentences, that the trial court erred in prohibiting trial counsel from raising issues previously litigated by Appellant as a *pro se* litigant without standby counsel. *See* Appellant's Brief at 62-63; Appellant's Reply Brief at 5-7. This issue, too, is waived.

Upon review, we find that Appellant fails to cite any pertinent legal authority or develop his argument, even in his reply brief. *See* Pa.R.A.P. 2119(a) (requiring each of Appellant's issues to be supported by discussion and pertinent legal authority); *Commonwealth v. Wright*, 314 A.3d 515, 532 (Pa. Super. 2024) ("[W]here an appellant fails to provide any discussion of his issue on appeal, or case law supporting his right to relief, [the Superior] Court will not address the issue on appeal."). Accordingly, we find that Appellant has waived this issue.

In his seventh issue, Appellant argues that the trial court abused its discretion by denying his "motion to block consolidation" and granting the Commonwealth's motion to consolidate the cases at docket numbers 328-2020 and 75-2021. *See* Appellant's Brief at 63.[14] He contends that the cases involved different co-defendants, arose from distinct factual circumstances,

---

[14] Appellant's motion to block consolidation was equivalent to a motion to sever. *See* Omnibus Pre-Trial Motion, 3/29/22, at 32-33; N.T. Omnibus Hearing, 6/2/22, at 31 (considering motion to block consolidation as a motion to sever).

occurred during different time frames, and were supported by separate warrants, discovery, and evidence. *See id.* at 63, 69-70. Appellant maintains that the evidence underlying each case would not have been admissible in a separate trial of the other under the Pennsylvania Rules of Evidence. *See id.* at 67-69.

According to Appellant, the drugs seized in the two cases, other than being a combination of heroin/fentanyl were "different and distinct with no relationship to the source." Appellant's Brief at 71. Moreover, Appellant notes that no statements were made to the CI on case number 328-2020 that would draw an inference or connection to case number 75-2021. *See id.* Appellant avers the "only commonality" between the two cases was Appellant's seized cellphone in case 328-2020 that was presented as a source of evidence to the jury for both cases. *See id.* at 71-72.

Appellant argues that the joinder of his cases resulted in substantial prejudice. *See* Appellant's Brief at 72. Specifically, he alleges that the jury was exposed to evidence in 75-2021, including testimony of the DDRD victim's mother, photographs of the victim, and the jury witnessed rows of the victim's family seated in the courtroom throughout the trial for both pending cases. *See* Appellant's Brief at 73. He asserts that the evidence for the DDRD prosecution would have been inadmissible in the PWID matter had each case been tried separately. *See id.* He contends that the volume and nature of this evidence prevented the jury from distinguishing between the offenses in separate criminal cases. *See id.* Appellant further argues that the joinder

precluded him from filing effective motions in *limine* in each individual case and allowed the Commonwealth to introduce overbroad cellphone extraction evidence obtained pursuant to a warrant in one case to support the other. **See** Appellant's Brief at 74 (citing N.T. Trial, 7/10/24, at 202, 204-05). Therefore, he asserts that the trial court's denial of severance constitutes reversible error. **See id.**

"Whether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." **Commonwealth v. Kurtz**, 294 A.3d 509, 531 (Pa. Super. 2023) (citation and brackets omitted).

"The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid expensive and time[-]consuming duplication of evidence." **Commonwealth v. Johnson**, 236 A.3d 1141, 1150 (Pa. Super. 2020) (*en banc*) (citation omitted). Pursuant to Rule of Criminal Procedure 582(A)(1): "[o]ffenses charged in separate indictments or informations may be tried together if: (a) the evidence of each offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or (b) the offenses charged are based on the same act or transaction." Pa.R.Crim.P. 582(A)(1).

Rule 583 provides that "[t]he court may order separate trials of offenses or defendants, or provide appropriate relief, if it appears that any party may

be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. "Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." *Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa. Super. 2010).

Reading Rule 582 and 583 together, our Supreme Court has established the following test for deciding severance motions:

> [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and if the answers to these inquiries are affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Ferguson*, 107 A.3d 206, 210 (Pa. Super. 2015) (quoting *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997)).

Generally, for prong one, pursuant to Rule of Evidence 404, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" and where "the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). We have also recognized that evidence of another crime may be admissible under the *res gestae* exception, defined as "a situation where the distinct crimes were part of a

chain or sequence of events which formed the history of the case and were part of its natural development." ***Commonwealth v. Brown***, 52 A.3d 320, 326 (Pa. Super. 2012).

Upon review of the record, we find that Appellant conceded the first two prongs of the severance test during pre-trial proceedings because he only argued that he wanted his case severed from Mittelmark's case (which the court granted) and that keeping 328-2020 and 75-2021 together would unfairly prejudice the jury when hearing the facts of both cases. ***See*** Omnibus Hearing, 6/2/22, at 30-31; Omnibus Pre-Trial Motion, 3/29/22, at 32-33. The Commonwealth, at the Omnibus Hearing, explained that the investigation in both cases started out with the death of the victim. ***See*** Omnibus Hearing, 6/2/22 at 31-32. The trial court agreed and, in denying Appellant's "motion to sever," reasoned that the criminal information at case 328-2020 involves allegations that Appellant committed crimes involving the distribution of illegal drugs on June 24 and 25, 2020. ***See*** Order, 1/29/23, at 9. Furthermore, the criminal information filed in 75-2021 involved allegations that Appellant committed various crimes involving the distribution of illegal drugs from April 2020 to June 2020. ***See id.*** The trial court also noted that the cases could be separated so as not to confuse the jury and Appellant failed to show prejudice. ***See id.***

Upon review of the record, we discern no abuse of discretion by the trial court. ***See Kurtz***, 294 A.3d at 531. Applying the severance test, the first prong is met because the evidence of each offense would have been

admissible in a separate trial, under the *res gestae* exception, because of the history of the case. ***See Brown***, 52 A.3d at 326. Here, the investigation started with the death of the DRDD victim and provided the sequence of events leading up to the controlled buy, resulting in Appellant's arrest with respect to the PWID matter. ***See Commonwealth v. Shackelford***, 293 A.3d 692, 703 (Pa. Super. 2023) (affirming trial court's order granting consolidation because the prosecution of a DDRD case against Shackelford provided the history of the case to connect Shackelford's PWID charge in his other case).

For the second prong, we agree with the trial court that the evidence was capable of separation from the jury. Here, the events of each case occurred at different times, being in April 2020 for the DDRD matter and in June 2020 for the PWID matter. Additionally, there were different co-defendants in each case, and the Commonwealth ensured that the jury knew which of the separate cases were at issue during the various stages of the joint trial. ***See Collins***, 703 A.3d at 423 ("Where a trial concerns distinct criminal offenses that are distinguishable in time, space[,] and the characters involved, a jury is capable of separating the evidence."); ***see also*** N.T. Trial, 7/11/24, at 75, 133.

Turning to the third prong, the record and explanation above demonstrates that the evidence was not so unduly prejudicial that it would divert the jury's intent away from looking at the evidence with impartiality. ***See Dozzo***, 991 A.2d at 902. Accordingly, we discern no merit for Appellant's seventh issue.

In his eighth issue, Appellant challenges the sufficiency of evidence for his DDRD conviction. *See* Appellant's Brief at 74.[15] Our standard and scope review of Appellant's sufficiency challenge is well-settled:

> Our applicable standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility.
>
> This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Rodriguez*, 340 A.3d 334, 347 (Pa. Super. 2025) (citing

*Commonwealth v. Dewald*, 317 A.3d 1020, 1038 (Pa. Super. 2024)).

Appellant concedes that the Commonwealth presented sufficient evidence that the victim in 75-2021 died because of the controlled substance

_____

[15] Appellant also purports to challenge the sufficiency of his DDRD conspiracy conviction, but he did not raise that claim in his Rule 1925(b) Statement. *See* Appellant's Brief at 78-80; Pa.R.A.P. 1925(b) Statement, 10/28/24, at 2. Accordingly, we find that portion of his sufficiency argument is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b) s]tatement … are waived.").

of heroin/fentanyl. *See* Appellant's Brief at 76. Appellant contends, however, that the evidence was insufficient to sustain his conviction for DDRD because the Commonwealth failed to prove that he delivered the fatal drugs to the victim. *See id.* Specifically, he alleges that there was insufficient evidence to show that he delivered the drugs to co-defendant Mittelmark on or around the time of the victim's death and to demonstrate that, "but-for" Appellant's actions, the crime of DDRD would have been committed. *See id.* at 76-77.

Next, Appellant argues that the evidence at trial showed that Mittelmark had his own independent sources for drugs and Appellant was not included in that network. *See* Appellant's Brief at 77 (citing N.T. Trial, 7/11/24, at 86). Additionally, he asserts that the Commonwealth did not provide evidence that Mittelmark and Appellant "had traveled together to pick up [the] drugs." *Id.* Moreover, he points out that Kelly Potts testified that she received a combination of heroin/fentanyl from Mittelmark. *See id.* at 77 (citing N.T. Trial, 7/11/24, at 99).[16]

Finally, Appellant alleges that, although the Commonwealth made efforts to demonstrate that Appellant and Mittelmark were in the same geographic area via cell phone tower data, Corporal Smith "[s]truggled to testify where the tower was located, the radius of the cellphone usage area,

_____

[16] Appellant's reference that Kelly Potts testified at trial is misleading. *See* Appellant's Brief at 77. Upon review of the record, we find that Potts did not testify at trial and Appellant refers, instead, to Corporal Smith's testimony that he interviewed Potts. *See* N.T. Trial, 7/11/24, at 88-90.

the number of towers in the geographical area or other relevant information."
Appellant's Brief at 77-78 (citing N.T. Trial, 7/11/24, at 78-81). He notes that,
even on cross-examination, Corporal Smith confirmed that Mittelmark made
phone calls to individuals other than Appellant. *See id.* at 78 (citing N.T. Trial,
7/11/24, at 82). Thus, according to Appellant, there was insufficient evidence
for his DDRD conviction. *See id.* at 78, 80.

A person commits the crime of DDRD when he: (1) "intentionally
administers, dispenses, delivers, gives, prescribes, sells[,] or distributes any
controlled substance or counterfeit controlled substance;" (2) such act violates
section 13(a)(14) or (30) of the Controlled Substance, Drug, and Cosmetic
Act ("Drug Act"); and (3) "another person dies as a result of using the
substance." 18 Pa.C.S. § 2506(a). This Court has held that DDRD does not
require the Commonwealth to prove that the defendant intended to cause the
death of another. *See Commonwealth v. Kakhankham*, 132 A.3d 986, 993-
94 (Pa. Super. 2015). Instead, the Commonwealth must establish that the
defendant's action with the substance was intentional and that that the
defendant had a "reckless disregard of death from the use of contraband."
*See Commonwealth v. Scott*, 325 A.3d 844, 850 (Pa. Super. 2024) (quoting
*Commonwealth v. Carr*, 277 A.3d 11, 17 (Pa. Super. 2020)).

The Commonwealth "satisfies the reckless element as to the possibility
of death" for the purpose of DDRD when the substance involved is heroin. *See
Storey*, 167 A.3d at 758 (finding sale of heroin satisfies the reckless element
for DDRD: "Since the dangers of heroin are so great and well-known, we

conclude that the sale of heroin, itself, is sufficient to satisfy the recklessness requirement when a death occurs as a result of the sale."); *see also Kakhankham*, 132 A.3d at 995-96. To establish that a person died as result of using the substance sold or distributed, "[t]he statute requires 'but-for' causation such that the defendant's actions with the drugs was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result." *Scott*, 325 A.3d at 850 (some internal quotation marks omitted). Moreover, "the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible." *Kakhankham*, 132 A.3d at 993 (citation omitted).

Upon review of the record, we find that Commonwealth presented both direct and circumstantial evidence that Appellant intentionally distributed heroin/fentanyl to the DDRD victim. The evidence established that, on April 18, 2020, Mittelmark and Appellant became friends on Facebook. *See* N.T. Trial, 7/10/24, at 185; Commonwealth Trial Exhibit 25 (Appellant Facebook Records) at 72. Between April 20 and 24, Appellant and the victim exchanged Facebook messages discussing drugs. *See* N.T. Trial, 7/10/24, at 91-99; Appellant Facebook Records at 79. On April 24, at 7:31 a.m., Appellant informed the victim that he would be "home at nine," and he "got food," an innuendo for "got drugs." N.T. Trial, 7/10/24, at 102. Appellant then directed the victim to communicate via Signal and sent him a uniform resource locator

(URL) link, demonstrating a deliberate effort to shift the conversation to a more secure communication platform.[17] *See id.* at 103-07.

At 6:53 p.m., Mittelmark sent a text message to the victim that Appellant told him to reach out. *See id.* at 108; Mittelmark T-Mobile Records. Then, at 7:12 p.m., Mittelmark sent a text message to the victim "two miles," and, one minute later, wrote that he was "…on the way there." N.T. Trial 7/10/24, at 108. At 7:17 p.m., the victim made a debit card purchase at a truck stop near Mittelmark's home address. *See* N.T. Trial, 7/11/24, at 142-44; Commonwealth Trial Exhibit 15 (Victim Debit Card Records). At 7:43 p.m., the victim sent a text message to Mittelmark, "[Let me know] when you're good again." N.T. Trial, 7/10/24, at 109. Around midnight, on April 25, 2020, Appellant sent a Facebook message to a friend that he had "a scare" because "6 people went down due to those pussy cat bags[,] but everyone survived. Yikes. Turns out they're carfent [fentanyl.]" *Id.* at 166-68; Appellant's Facebook Record at 385. That morning, the victim was found deceased in his bedroom by his mother at around 10 a.m. *See* N.T. Jury Trial, 7/9/24, at 65-66; Commonwealth Exhibit 10 (Certificate of Death) (stating victim's cause of death is fentanyl toxicity).

The Commonwealth also presented evidence of labeled "Antrax" and "Pussycat" glassine packets of heroin/fentanyl left in the bedroom of the victim

---

[17] Signal is a cellular phone messaging application that allows users to send encrypted text messages and make voice and video calls over the internet. *See* N.T. Jury Trial, 7/11/24, at 105.

that had the same markings and identifiers as discussed by Appellant in the various messages discussed above. *See* N.T. Trial, 7/10/24, at 42-43, 159, 164-65; Commonwealth Trial Exhibit 8 (Glassine Packets Photograph). Moreover, a latent print examiner identified the presence of Appellant's hand, but not the rest of his body, in a photograph on Mittelmark's phone of Appellant holding glassine packets labeled "Antrax" and "Pussycat." *See* N.T. Trial, 7/10/24, 205-09; N.T. Trial, 7/11/24, at 5-7, 11, 29.[18] Furthermore, while Appellant was in custody for his PWID charge and other related offenses under docket number 328-2020, he made several recorded telephone calls during his pre-trial detainment that were introduced into evidence at trial. *See* N.T. Trial, 7/10/24, at 190-96. For example, in a July 2, 2020 phone call that was played for the jury, Appellant said, "Hey [Mittelmark,] when I sent you to handle that kid [(the victim)]. Whatever happened to him. Oh … he fucking died." *Id.* at 194; Commonwealth Trial Exhibit 16 (July 2 Phone Call) at 11:00.

From this evidence, the jury could reasonably conclude that Appellant supplied the heroin/fentanyl through Mittelmark that resulted in the DDRD victim's death. *See Kakhankham*, 132 A.3d at 995-96. In essence, Mittelmark was Appellant's agent, and our Court has held that a person "constructively" delivers drugs when he directs another person to convey the drugs under his control to another. *See Scott*, 325 A.3d at 851. Appellant

---

[18] *See* Commonwealth Trial Exhibits 31 (Appellant Hand Photograph), 47 (Latent Fingerprint Examiner Information), and 51 (Appellant Fingerprint Report).

may not have physically handed the drugs to the victim; however, the evidence above shows that he was a distributor in the distribution chain for the drug transaction that resulted in the victim's death. Upon viewing the record in the light most favorable to the Commonwealth as the verdict winner, there was sufficient evidence to link Appellant to the distribution of heroin/fentanyl that led to the victim's death and that evidence amply proved the causation element for DDRD.[19] *See Rodriguez*, 340 A.3d at 347. Therefore, Appellant's eighth issue is meritless.

For all the foregoing reasons, Appellant is not entitled to relief on his issues presented on appeal. Accordingly, we affirm Appellant's convictions at both docket numbers.

Nevertheless, before concluding our review, we note that there are multiple issues with Appellant's combined sentences that implicate legality. We have uncovered concerns over: (1) whether Appellant's sentences, under docket number 75-2021, for DDRD and PWID, and conspiracy to commit DDRD and conspiracy to commit PWID should have merged for sentencing purposes; (2) whether Appellant could be sentenced on multiple inchoate conspiracy counts in the same case under docket number 75-2021; and (3) whether Appellant could be sentenced to separate concurrent imprisonment

_____

[19] It is of no moment whether Appellant knew exactly which drug he was delivering because both heroin and fentanyl carry inherently dangerous risks and the evidence was sufficient to establish that Appellant intended to, at least, deliver heroin/fentanyl to the DDRD victim. *See Storey*, 167 A.3d at 758.

terms for PWID and knowing or intentional possession of a controlled substance in the same case under docket number 328-2020. Since the correction of the apparent illegality with Appellant's judgments of sentence would upset the aggregate sentencing scheme, and would be instructive for the trial court, we will *sua sponte* address the legality of the judgments of sentence. **See** Order (sentencing), 9/6/24, at 1-3 (unpaginated).

> Section 9765 of the Sentencing Code provides that:
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. "The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Commonwealth v. Martinez**, 153 A.3d 1025, 1030 (Pa. Super. 2016) (citation omitted).

Section 906 of the Crimes Code provides that "[a] person may not be convicted of more than one of the inchoate crimes of [] criminal conspiracy for conduct designed to commit or culminate in the commission of the same crime." 18 Pa.C.S. § 906. "Pennsylvania courts have applied [Section 906] in situations where a defendant commits two or three inchoate offenses while preparing to commit a single underlying crime." **Commonwealth v. Kingston**, 143 A.3d 917, 923 (Pa. 2016) (citation omitted). The courts of this

Commonwealth have interpreted the term "convicted" in Section 906 to mean "the entry of a judgment of sentence, rather than a finding of guilt by the jury." **Commonwealth v. Jacobs**, 39 A.3d 977, 983 (Pa. 2012) (plurality opinion). Applying Section 906, "inchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." **Id.** (citation omitted).

"A claim that crimes should have been merged for sentencing purposes raises a challenge to the legality of sentencing." **Commonwealth v. Cianci**, 130 A.3d 780, 782 (Pa. Super. 2015) (citation omitted); **Commonwealth v. Hill**, 238 A.3d 399, 407-08, (Pa. 2020) (stating our Court may raise and address challenge to legality of sentence *sua sponte*). Moreover, a Section 906 violation goes to the legality of a sentence. **See Jacobs**, 39 A.3d at 982 (plurality opinion) ("[S]eparate sentences […] barred by Section 906's prohibition of multiple sentences for inchoate crimes […] relates to the legality of sentence[]."); **see also Commonwealth v. Cooke**, 492 A.2d 63, 70 & n.3 (Pa. Super. 1985) (addressing Section 906 violation *sua sponte*). Legality of sentence is a question of law for which our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Cruz**, 320 A.3d 1257, 1272 (Pa. Super. 2024).

*Sentencing under 75-2021*

As set forth above, DDRD requires proof of an unlawful delivery of a controlled substance in violation of the Drug Act, resulting in death. **See** 18 Pa.C.S. § 2506(a). On the other hand, PWID requires only the proof of

possession of a controlled substance with the intent to deliver that controlled substance in violation of the Drug Act. **See** 35 P.S. § 780-113(a)(30); **Commonwealth v. Roberts**, 133 A.3d 759, 767 (Pa. Super. 2016) (citation omitted). Thus, DDRD includes the same underlying criminal action satisfying PWID, since DDRD is essentially PWID with an additional element where "another person dies as a result of using the substance" that was possessed with the intent to distribute. **Compare** 18 Pa.C.S. § 2506(a) **with** 35 P.S. § 780-113(a)(30).

We acknowledge that we have not previously discussed in many cases where we have considered whether PWID is a lesser included offense of DDRD. However, we observe that the merger of PWID and DDRD is similar to our recent reiteration that a conviction for simple possession should merge with a conviction for PWID for sentencing purposes when "both charges stemmed from the same act of possession." **Commonwealth v. Knupp**, 290 A.3d 759, 777 (Pa. Super. 2023) (citation omitted).

However, we note that, in at least one non-precedential case, we have pointed out that separate sentences for PWID and DDRD should merge when they arise from the same act of drug distribution.[20] For instance, in **Commonwealth v. Reese**, we found that the trial court failed to merge Reese's sentences for DDRD and PWID. **See Commonwealth v. Reese**, 2019

---

[20] Non-precedential decisions of this Court that were filed after May 1, 2019, may be cited for their persuasive value. **See** Pa.R.A.P. 126(b).

WL 6358946 at *4, (Pa. Super., filed Nov. 27, 2019) (unpublished memorandum) (140 MDA 2019). We reasoned that, where all the statutory elements for delivery of a controlled substance are included in the first element of DDRD and the facts and circumstances supporting both offenses were the same, Reese's consecutive sentences for DDRD and PWID should have merged. **See id.** at *3.

Then, in **Commonwealth v. Cesa**, we did not *sua sponte* raise that Cesa's sentence was illegal even though Cesa was also convicted for two counts of conspiracy for PWID and DDRD. **See Commonwealth v. Cesa**, 2025 WL 1355966 at *1, *3 (Pa. Super., filed May 9, 2025) (unpublished memorandum) (369 WDA 2024). In that case, however, the PWID and DDRD charges were based on the possession of **different** controlled substances. **See Cesa**, 2025 WL 1355066 at *7. Cesa conspired to commit DDRD (fentanyl) and the jury acquitted him of PWID (fentanyl) and found him guilty of PWID (heroin). **See id.** In the instant case, Appellant conspired to commit PWID and DDRD with heroin/fentanyl, the **same** controlled substance. **See** Bill of Information, 3/29/21, at 1-2 (case 75-2021).

Here, the 75-2021 bill of information confirms that the four counts DDRD, PWID, and the related conspiracy counts stemmed from Appellant's possession and distribution of the same controlled substance. **See** Bill of Information, 3/29/21, at 1-2 (case 75-2021). Appellant possessed the heroin/fentanyl and intended to distribute it to the victim, which resulted in his death. **See id.** Therefore, at this docket, Appellant's sentences for PWID,

as a lesser offense to DDRD, should have merged for sentencing purposes with the DDRD conviction. *See Martinez*, 153 A.3d at 1030.

Further, the charging document for Appellant's case at 75-2021 indicates that, for purposes of the conspiracy to commit DDRD conviction, Appellant agreed with Mittelmark to deliver heroin/fentanyl to the victim between April and June 2020, and it lists overt acts such as travel to obtain controlled substances, electronic communications, and the April 24 delivery that resulted in death. *See* Bill of Information, 3/29/21, at 1 (case 75-2021). Appellant's additional charge for conspiracy to commit PWID is also based upon the same time frame, same co-conspirator, and the same acts of distributing heroin/fentanyl. *See id.* at 2. Because the record reflects that there was a single agreement between Mittelmark and Appellant for possession and distribution of the heroin/fentanyl to the DDRD victim, and the separate conspiracy charges were directed to the commission of the same overt criminal acts, the imposition of separate sentences for conspiracy to commit PWID and conspiracy to commit DDRD violates Section 906's prohibition against multiple inchoate convictions for acts designed to culminate in the commission of the same crime. *See Kingston*, 143 A.3d at 923; *see also Commonwealth v. Carr*, 227 A.3d 11, 15-17 (Pa. Super. 2020) (concluding that conspiracy to commit DDRD is a cognizable offense under Pennsylvania law). Therefore, Appellant's two conspiracy convictions should have merged for sentencing purposes because the conspiracy to commit PWID charge was a lesser included offense of the conspiracy to

commit DDRD charge and merger complies with the requirements of Section 906. **See** 18 Pa.C.S. § 906; 42 Pa.C.S. § 9765.

*Sentencing under 328-2020*

We further address another legality of sentence issue *sua sponte*, because we note that, consistent with **Knupp**, **supra**, Appellant's convictions for PWID and knowing or intentional possession in the case at 328-2020 should have merged for sentencing purposes because both charges were based on the distribution of the **same** controlled substance. **See** Bill of Information, 8/31/20, at 1-2 (case 328-2020); **Martinez**, 153 A.3d at 1030. Therefore, the knowing or intentional possession of a controlled substance conviction should have been treated as a lesser included offense of the PWID conviction in the case at 328-2020. **See Knupp**, 290 A.3d at 777. Additionally, while the concurrent imprisonment term for simple possession in that case does not affect the overall sentencing scheme, we conclude that term of imprisonment should also be vacated as illegal.

*Remand*

As explained above, the scheme for Appellant's aggregate sentence was 35 years and 4 months to 87 years and 6 months' imprisonment. **See** Order (sentence), 9/6/24, at 5-6 (unpaginated). Here, the trial court imposed consecutive sentences for Appellant's DDRD and PWID convictions in case 75-2021 as well as the related conspiracy convictions in that matter, and we find that the merger of the lesser included offenses of PWID and conspiracy to commit PWID would upset the overall sentencing scheme. The trial court

should have merged the DDRD and PWID convictions and both conspiracy convictions in the case at 75-2021 and merged the convictions of PWID and knowing or intentional possession of a controlled substance in the case at 328-2020. Therefore, since vacatur of even one of the consecutive imprisonment terms addressed herein for PWID and conspiracy to commit PWID reduces the aggregate term and disturbs the sentencing scheme fashioned by the trial court, resentencing and a remand at both dockets is required. ***See Commonwealth v. Thur***, 806 A.3d 552, 569-70 (Pa. Super. 2006).

Convictions affirmed. Judgments of sentence at docket numbers 75-2021 and 328-2020 vacated. Cases remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

President Judge Lazarus joins the opinion.

Judge Bowes files a concurring opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2026